# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MIGUEL LUCERO LOPEZ,

Petitioner,

v.

WARDEN, GOLDEN STATE ANNEX DETENTION FACILITY, et al.,

Respondents.

Case No. 1:26-cv-02769-KES-EPG-HC

FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO PROVIDE PETITIONER WITH BOND HEARING

Petitioner is a federal immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends granting the petition for writ of habeas corpus and directing Respondents to provide Petitioner with a bond hearing.

## I.

## BACKGROUND

Petitioner is a citizen of Mexico who was admitted to the United States as a lawful permanent resident on June 25, 1990. (Exh. 2.[1]) On October 4, 1993, Petitioner was convicted of infliction of corporal injury on a spouse/cohabitant, in violation of California Penal Code section 273.5, and was sentenced to 365 days in jail and 36 months of probation. (ECF No. 10 at 15.)

On January 3, 2013, a notice to appear ("NTA") was issued, charging Petitioner pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"). (ECF No. 10 at 15.)

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

On May 28, 2025, an immigration judge ("IJ") denied Petitioner's applications for relief from removal and ordered Petitioner removed to Mexico. (ECF No. 10 at 35–38.) On June 23, 2025, Petitioner filed an appeal with the Board of Immigration Appeals ("BIA"). (ECF No. 10 at 42.)

On March 22, 2026, Petitioner was arrested for driving under the influence. (ECF No. 10 at 42.) Petitioner had been enrolled in the Alternatives to Detention ("ATD") program. On March 28, 2026, Petitioner reported for a scheduled appointment with U.S. Immigration and Customs Enforcement ("ICE"). Due to the DUI arrest, Petitioner was taken into ICE custody. (Id. at 41.)

On April 13, 2026, Petitioner filed a petition for writ of habeas corpus raising a prolonged detention due process claim. (ECF No. 1 at 7–18.) The Court construed the petition as also raising a due process claim regarding Petitioner's re-detention and challenging the statutory authority for Petitioner's detention. (ECF No. 8 at 1.) On April 27, 2026, Respondents filed a response. (ECF No. 10.) To date, no traverse has been filed, and the time for doing so has passed.

## II.

## DISCUSSION

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Here, Respondents assert that Petitioner is detained pursuant to 8 U.S.C. § 1226(c),[2] which provides in pertinent part that the "Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title[.]" 8 U.S.C. § 1226 (c)(1)(B). Section 1226(c) "specif[ies] that the Attorney General 'may release' one of those aliens '*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (emphasis in original).

---

[2] The Ninth Circuit has "conclude[d] that Subsection C applies throughout the administrative and judicial phases of removal proceedings." Avilez v. Garland, 69 F.4th 525, 535 (9th Cir. 2023).

"We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted).

**A. Liberty Interest**

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Id. at 690. In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court addressed whether due process requires a parolee be afforded some opportunity to be heard prior to revocation of parole. 408 U.S. at 472. In examining "the nature of the interest of the parolee in his continued liberty," the Supreme Court stated:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

Morrissey, 408 U.S. at 482. The Supreme Court found "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others" and held that "the liberty is valuable and must be seen as within the protection of" due process. Morrissey, 408 U.S. at 482.

Relying on Morrissey, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody. See, e.g., Doe v. Becerra, 787

F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); J.A.E.M. v. Wofford, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); J.C.L.A. v. Wofford, No. 1:25-cv-01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); Qazi v. Albarran, No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); Maklad v. Murray, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *7–8 (E.D. Cal. Aug. 8, 2025).

This Court has held that a noncitizen who had been out of prison for four years and four months and then mandatorily detained pursuant to 8 U.S.C. § 1226(c) had a protected liberty interest in remaining out of custody. Kakkar v. Chestnut, No. 1:25-cv-1627 JLT SAB, 2025 WL 3638298, at *5–6 (E.D. Cal. Dec. 15, 2025). Further, this Court has held that a noncitizen who was mandatorily detained pursuant to 8 U.S.C. § 1226(c) upon release from prison, ordered released by a district court presiding over a class action challenging the conditions of confinement during the COVID-19 pandemic based on criteria that he did not pose a flight risk or present a danger to the community, complied with all requirements for five years while out of custody, and then re-detained "present[ed] a stronger due process concern because there ha[d] already been a court determination that petitioner did not present a flight risk or danger to the community, and respondents do not present any evidence of any change in these circumstances." Benevides Carballo v. Andrews, No. 1:25-cv-00978-KES-EPG (HC), 2025 WL 2381464, at *6 (E.D. Cal. Aug. 15, 2025), appeal filed, No. 25-6533 (9th Cir. Oct. 16, 2025).

Here, Petitioner was convicted in 1993 of infliction of corporal injury on a spouse/cohabitant, in violation of California Penal Code section 273.5, and was sentenced to 365 days in jail and 36 months of probation. On January 3, 2013, an NTA was issued, charging Petitioner pursuant to section 237(a)(2)(A)(iii) of the INA due to this conviction. (ECF No. 10 at 15.) It is unclear whether Petitioner was detained at that time, but at some point Petitioner was enrolled in the ATD program. Although Respondents now contend that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(B) because Petitioner's 1993 conviction

is a conviction for an aggravated felony, (ECF No. 10 at 3–4), Respondents fail to contend with the liberty interest created by the fact that Petitioner had been released and enrolled in the ATD program. "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017). Petitioner's 1993 conviction occurred before Petitioner's prior release from immigration custody,[3] the government previously concluded that this conviction did not render Petitioner a danger or a flight risk such that detention was required. Accordingly, the undersigned recommends finding that Petitioner has a protected liberty interest in remaining out of immigration custody.

**B. Bond Hearing**

Applying the Mathews v. Eldridge, 424 U.S. 319 (1976) test, courts in this district have found that petitioners with a protected liberty interest in remaining out of immigration custody are entitled to a bond hearing where the government bears the burden of proving by clear and convincing evidence that the petitioner is a danger to the community or a flight risk such that detention is warranted. See, e.g., Carmen G.C. v. Robbins, No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304, at *7 (E.D. Cal. Dec. 8, 2025) ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove that she is a flight risk or danger to the community by clear and convincing evidence."); J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention."); Kakkar, 2025 WL 3638298, at *8 (ordering substantive parole revocation hearing where government bears burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight); Carballo, 2025 WL 2381464, at *8 ("On

[3] There is nothing in the record before the Court that sets forth the date Petitioner was previously released from immigration detention. However, the Department of Homeland Security initiated removal proceedings by issuing an NTA on January 3, 2013, so the Court presumes Petitioner was released from immigration detention on or after January 3, 2013.

balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

Accordingly, the undersigned recommends finding that Petitioner is entitled to habeas relief on the construed due process claim challenging his re-detention and a bond hearing where the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk such that detention is warranted.[4]

## III.

## RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be GRANTED on the construed due process claim challenging Petitioner's re-detention; and
2. Respondents be directed to provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), and at which
    a. "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," Singh, 638 F.3d at 1203; and
    b. the IJ should consider Petitioner's financial circumstances or alternative conditions of release in the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017).

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file

---

[4] In light of this conclusion, the Court declines to address Petitioner's prolonged detention due process claim.

written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 6, 2026**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE